OPINION OF THE COURT
Alexander W. Hunter, Jr., J.
Petitioners’ application for an order pursuant to CPLR article 78, declaring certain amended rules of the New York City Taxi and Limousine Commission as arbitrary and capricious, is denied. Petitioners’ application for discovery and a trial is denied. Respondents’ cross motion seeking an order dismissing the petition pursuant to CPLR 3211 (a) (3) and (7) is granted and the proceeding is dismissed.
Petitioners Greater New York Taxi Association and its member Evgeny Freidman (collectively, petitioners) seek to declare that certain new regulations, dated July 12, 2012, adopted by respondent New York City Taxi and Limousine Commission (TLC) and its commissioner, respondent David Yassky (collectively, respondents), are arbitrary, capricious, and/or beyond the authority of TLC.
On October 23, 2012, petitioners submitted a request to TLC for records pursuant to the Freedom of Information Law (FOIL) concerning decisions (1) permitting yellow taxi medallion owners to retain 5% of each taxi fare paid by credit card; (2) raising the fleet lease caps for credit card processing fees to $10 per shift, instead of a 5% withholding on credit card transactions; (3) requiring yellow taxi medallion owners to withhold from drivers $0.06 per ride for health care and disability coverage; (4) granting no portion of the 17% fare increase to medallion owners; and (5) changing the exterior markings of yellow taxicabs. Additionally, petitioners sought records concerning executive sessions held in connection with raising the fleet lease caps, and records concerning passengers’ use of credit cards to pay taxi fares. On November 6, 2012, petitioners renewed their FOIL request, as petitioners had not received a response from respondent TLC. By letter dated January 31, 2013, TLC’s records ac *1065 cess officer enclosed responsive documents to petitioners’ FOIL request, but acknowledged that the production was not complete and that more documents would be forthcoming. Petitioners filed a written appeal of the January 31, 2013 deficient production. On March 1, 2013, petitioners received two additional responsive documents, and notified TLC of their intent to file a written appeal of the deficient production.
Petitioners commenced the instant CPLR article 78 proceeding asserting four causes of action seeking an order declaring as arbitrary and capricious the: (1) credit card changes; (2) exterior changes; and (3) health fund deduction. Petitioners’ fourth cause of action seeks attorneys’ fees. Petitioners also seek discovery on the above causes of action. Petitioners aver that: (1) replacing the 5% credit card reimbursement with a $10 per shift reimbursement shifts the cost of credit card expenses from drivers to owners; (2) TLC exceeded its delegated powers in promulgating the rule authorizing the creation of a drivers’ health and disability fund; (3) the rule mandating the removal of the word “Taxi” from the exterior of taxicabs and replacing it with a large “T” is arbitrary and capricious and should be annulled; (4) TLC violated the Open Meetings Law entitling petitioners to recover attorneys’ fees; and (5) petitioners should be permitted to conduct discovery.
In opposition, respondents cross-move to stay or dismiss the first cause of action, and to dismiss the second through fourth causes of action, averring that: (1) petitioners have not suffered any injury from the implementation of the $10 per shift reimbursement; (2) petitioners do not have standing to challenge the $0.06 driver health fund deduction; (3) petitioners have not suffered any injury from recent changes to the exterior markings on taxicabs; (4) the petition failed to establish a violation of the Open Meetings Law; and (5) petitioners are not entitled to discovery.
Petitioners oppose respondents’ cross motion, averring that: (1) petitioners have standing to challenge the credit card reimbursement regulation, as petitioners have already suffered an actual injury; (2) petitioners have standing to assert the claim that TLC exceeded its delegated powers when it mandated the creation of a drivers’ health and disability plan; (3) TLC’s rule mandating changes in the exterior appearance of taxicabs is arbitrary and capricious; and (4) petitioners should be permitted to conduct discovery.
In reply, respondents aver that: (1) petitioners failed to submit opposition to respondents’ motion seeking dismissal of their *1066 Open Meetings Law claim; (2) petitioners offered no rationale why the first cause of action, pertaining to the lease cap credit card increase, should not be severed and stayed; (3) recent credit card data continues to show that petitioners have suffered no injury-in-fact from the change to a $10 per shift flat credit card fee reimbursement; (4) petitioners have no standing to challenge the $0.06 driver health care deduction and have failed to show that the deduction is beyond the powers of TLC; (5) petitioners’ challenge to the new exterior markings on taxicabs must be dismissed as petitioners’ new economic injury allegations cannot be considered, and the exterior markings claim is barred by laches; and (6) petitioners have set forth no entitlement to discovery in this proceeding.
An administrative regulation will be upheld only if it has a rational basis and is not unreasonable, arbitrary or capricious. (Kuppersmith v Dowling, 93 NY2d 90 [1999].) “An action is arbitrary if it ‘is without sound basis in reason and is generally taken without regard to the facts.’ ” (Matter of Roberts v Gavin, 96 AD3d 669, 671 [1st Dept 2012], quoting Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974].)
TLC is granted broad power to “adopt and establish an overall public transportation policy governing taxi . . . services.” (See NY City Charter § 2300.) Respondents are authorized to set fares, “consider[ing] all facts which in its judgment have a bearing on a proper determination, with due regard among other things to . . . the expenses of operation including the income of drivers.” (NY City Charter § 2304 [c].) Respondents’ rule that dictates how owners’ credit card processing expenses are reimbursed fits within the “regulatory and supervisory” authority of TLC as set forth in NY City Charter §§ 2300 and 2303 (b). Moreover, respondents’ rule is rationally supported by the rising costs of living and expenses, and the fact that taxi drivers earn less from a credit card trip than from a cash trip, whereby drivers often seek to discourage passengers from paying by credit card. (Mintz aff, exhibit 10 at 9-13, 29-30.) Accordingly, petitioners’ first cause of action is dismissed pursuant to CPLR 3211 (a) (7).
To challenge a governmental action in an article 78 proceeding, a party must first have standing to sue. (See New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004].) A plaintiff must show an “injury in fact,” and the *1067 injury must fall within the zone of interests or concerns sought to be promoted or protected. (Id. at 211, citing Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 763 [1991].) Petitioners have failed to annex complete financial information showing that the $10 per shift credit card reimbursement is inadequate overall. However, respondents affirmed that medallion owners have actually benefitted from the change to a $10 per shift flat fee credit card reimbursement. From September 30, 2012 through December 31, 2012, the average amount of credit card payments made during one shift was $169.15, which amounted to $8.46 deducted per shift using the 5% deduction rule. (Chhabra aff H 14.) This is $1.54 less than what medallion owners are now collecting under the $10 per shift reimbursement. Accordingly, petitioners’ first cause of action is dismissed pursuant to CPLR 3211 (a) (3).
Petitioners’ second cause of action rests solely on the fact that the exterior changes may cause “consumer confusion.” (Verified petition ¶¶ 82, 84, 86, 88, 92.) However, since the exterior decal changes have been implemented, TLC has not seen an increase in complaints from passengers that the changes have made it harder for them to discern a New York City taxicab from a livery car. (Chhabra aff ¶¶ 19-20.) Petitioners have not suffered an injury-in-fact, personal to them and distinguishable from an injury incurred by the public. (See Matter of Colella v Board of Assessors of County of Nassau, 95 NY2d 401 [2000]; Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406 [1987].) Accordingly, petitioners’ second cause of action is dismissed pursuant to CPLR 3211 (a) (3).
With respect to petitioners’ third cause of action, petitioners are not required to make a financial contribution to the drivers’ health fund. Petitioners’ only contemplated role is to withhold $0.06 per ride from drivers’ end-of-shift cash reimbursements for delivery to a plan administrator. Petitioners will not have the fiduciary responsibility of administering the plan. (Chhabra aff ¶ 30.) The fact that petitioners may need to hire additional staff to perform this function does not amount to an injury-in-fact, as medallion owners already have administrative structures in place to effectuate deductions from drivers’ pay. (Chhabra aff ¶ 29.) Additionally, petitioners’ third cause of action does not fall within the zone of interests, as the intended beneficiaries are the drivers, and medallion owners are only marginally affected. (Matter of New York State Psychiatric Assn., *1068 Inc. v Mills, 29 AD3d 1058 [3d Dept 2006], lv denied 7 NY3d 708 [2006].) Accordingly, petitioners’ third cause of action is dismissed pursuant to CPLR 3211 (a) (3).
Furthermore, TLC has the authority to adopt regulations pertaining to driver safety and public safety. (See NY City Charter §§ 2303, 2304; see also Metropolitan Taxicab Bd. of Trade v New York City Taxi & Limousine Commn., 18 NY3d 329 [2011].) Section 2303 (b) (6) of the City Charter allows TLC to establish “[Requirements of standards of safety ... in the operation of vehicles and auxiliary equipment.” The fact that a healthy driver is a safe driver is specifically referenced in the Administrative Code of the City of New York. An applicant for a taxi driver license must be “of sound physical condition with good eyesight and no epilepsy, vertigo, heart trouble or any other infirmity of body or mind which might render him or her unfit for the safe operation of a licensed vehicle.” (Administrative Code § 19-505 [b] [3].) The driver health care deduction rule was promulgated in accordance with TLC’s broad grant of power allowing TLC to establish requirements of safety, and the Administrative Code which specifically relates a driver’s health to the safe operation of a licensed vehicle. Accordingly, respondents’ rule authorizing the $0.06 per trip deduction from drivers’ end-of-shift cash reimbursements to help fund health and disability coverage for drivers does not exceed respondents’ authority.
The purpose of the Open Meetings Law is to ensure that “public business be performed in an open and public manner and that the citizens of this state be fully aware of and able to observe the performance of public officials.” (Public Officers Law § 100.) All meetings of a public body are open to the public with the exception of executive sessions. (Id. § 103 [a].) A public body is defined as an entity for which a quorum is required in order to conduct public business. (Id. § 102 [2].) Costs and reasonable attorneys fees may be awarded by the court, in its discretion, to the successful party. (Id. § 107.) Petitioners assert there may have been a material violation of the Open Meetings Law on July 12, 2012, whereby petitioners believe a private meeting was held for the purpose of transacting public business, but petitioners failed to allege or present any evidence establishing a quorum of at least five of the nine TLC commissioners. (Matter of MCI Telecom. Corp. v Public Serv. Commn. of State of N.Y., 231 AD2d 284, 290 [3d Dept 1997], citing Matter of Orange County Publs., Div. of Ottaway Newspapers v Council of City of *1069 Newburgh, 60 AD2d 409, 412-412 [2d Dept 1978], affd 45 NY2d 947 [1978].) Accordingly, petitioners’ cause of action for attorneys’ fees is dismissed pursuant to CPLR 3211 (a) (7).
Petitioners have failed to establish an ample need for the discovery they seek, as their discovery request is duplicative of their FOIL request. (Linden Airport Mgt. Corp. v New York City Economic Dev. Corp., 71 AD3d 501 [1st Dept 2010].) TLC is in the process of providing a rolling response to petitioners’ FOIL demand, whereby petitioners have already received a CD-ROM containing approximately 1,077 pages of responsive documents. Accordingly, petitioners’ discovery request is denied.
Accordingly, it is hereby adjudged that petitioners’ application for an order pursuant to CPLR article 78, declaring certain TLC amended rules as arbitrary and capricious and annulling such rules, is denied. Respondents’ cross motion seeking an order dismissing the petition pursuant to CPLR 3211 (a) (3) and (7) is granted and the proceeding is dismissed.